May it please the Court, I'm Robert Williams and I represent Ms. Piatz, who is a disabled woman of 49 years old. We've made a number of, we've signed many points of error in this case, and it's from the failures of finding her to be disabled to the different administrative review process. As to her being disabled, I think that one thing that is almost an arrow to get right to the heart of the thing is that in the second application, which she was approved and we've alleged should be part of the reconsideration back at the administrative level, the ALJ acknowledged her existence of carpal tunnel syndrome and that those findings are from a time that was looked at in the original hearing from September of 2007 with the objective medical evidence showing the carpal tunnel syndrome on her MRIs. That was completely overlooked by the first ALJ. He made no discussion of the carpal tunnel, he talked in terms of general myalgias, but for that one reason in and of itself, I think that this case has to go back to the administrative level because for reconciliation of these two cases, because they are looking at evidence from the same time period. Well, I had the impression when I read the briefs that I may have been mistaken that your principal position was that there was a failure to take into account fibromyalgia. There was reference to myalgia, but not fibromyalgia. And that is true also, Your Honor. Is that what is your main contention? Is it carpal tunnel or is it fibromyalgia? They all interrelate, Your Honor, is the problem. I mean, the nature of these types of disabilities do cause them to interrelate. Right. We do think there is a substantial difference between talking about someone having multiple myalgias, which does not suggest that it is necessarily disabling, versus having fibromyalgia, which has very specific definitions by the Academy of Rheumatologists. All four quadrants have to be affected, 11 tender points. But fibromyalgia being one of those very difficult types of things, I also did want to make sure that we did not overlook and point it out to the Court that there was this carpal tunnel syndrome that was diagnosed, it did have objective medical evidence, it is bilateral, and it was not discussed at all in that first ALJ decision. He just overlooked it, missed it. Additionally, in connection with the issues of credibility of the witness, which of course are very important in cases like this where there are a lot of issues surrounding pain, we do believe that the types of evidence looked at by the ALJ just are not the type of evidence that supports issues. Is it your position, counsel, that a lack of consideration of carpal tunnel syndrome invalidates the basis upon which residual functional capacity was found in Steps 4 and 5? I believe that it had to be considered because everything has to be looked at together, Your Honor, and the combined effect. And what we do know for certain is that the second ALJ, looking at this same evidence, and the evidence of the carpal tunnel syndrome There's no appeal from the second one. Correct, Your Honor. That was the later finding under SSI. She's got her disability from 2005 on. She's now trying to get it from 2005 to 2003. That's not accurate, Your Honor. The second disability finding is May of 2008. 2008. But she's trying to go back to? So this is about going backwards on both her SSI and her disability benefits issues. Since the second application was purely one of SSI, certainly by the analysis of the second judge, we have to take her back to at least September where there's clear medical evidence through the MRIs of the carpal tunnel. But if we look at the evidence as a whole, we find that she's? The carpal tunnel by itself is not one of the listed elements under Step 3 that gives her disability. Correct? Yes, Your Honor. So what you're saying is that the failure of the ALJ to take into account in asking questions to the vocational rehabilitation expert in determining residual functional capacity of the presence of carpal tunnel syndrome invalidates his opinion. Now, tell me what about carpal tunnel syndrome would affect this person's ability to do the work which the vocational expert found that she was able to do and gave her residual functional capacity. And among other things that would have affected, Your Honor, would be her ability to lift and also to do the sort of repetitive functions that? Lift and repetitive function. Would it limit her ability to lift a certain pound? I believe it would, Your Honor, and one of the problems, of course, and why we think that the remand is necessary is it's not looked at, it's not analyzed, and so we don't have the benefit of that analysis either by the ALJ or the vocational experts. Additionally, in connection with the assessments of her reports on pain, I just would like to draw the Court's attention to Oren v. Astru because the nature of places where the ALJ found her to not be credible or confused are ones that I think, based on the circuit authority, don't support a finding of non-credibility in reporting of pain. He's pointing to things like she overtook antidepressant medication, something that she could be expected by someone of the limited intellectual capability she has. She didn't quit smoking. Those are, like obesity, something that is a very hard thing to treat, and by just pointing to something like that alone as she's not compliant or not reliable, I think is outside the realm of what the Court would properly consider to be external evidence to be considered for credibility findings on pain. With that, I'll reserve your honor. MS. TALBERT. Okay. May it please the Court, Daniel Talbert for the Commissioner of Social Security. Substantial evidence supports the ALJ's October 2007 decision finding that the claimant, was not disabled from January 2003 through October 2007. In so finding, the ALJ relied on the opinions of six medical professionals who gave opinions in the record. That included two doctors who examined the claimant and four doctors who reviewed the claimant's medical records. Would you address what Mr. Weems brought up in his statement, the issue that there was a diagnosed condition of carpal tunnel syndrome, which was not mentioned and therefore probably not evaluated by the ALJ, and whether that would have any effect on Dr. Garfinkel's examination, which found that she could lift and carry 50 pounds occasionally and 25 pounds a lot, and that she could do repetitive hand work? Yes, Your Honor. Two things in response to that. First of all, the mere diagnosis of carpal tunnel syndrome does not establish any necessary functional limitations. The claimant had been talking about hand limitations and pain throughout the record, and the ALJ limited the use of her hands, limited her to, I believe, frequent use of the hands, which is less than continuous use. Second, the ALJ did not agree with Dr. Garfinkel that the claimant was able to lift up to 50 pounds occasionally and up to 25 pounds frequently. The ALJ limited her to lifting only 20 pounds at the most and 10 pounds on a more regular basis. And there's no evidence in the record to indicate any further manipulative hand limitations than what the ALJ found. The diagnosis of carpal tunnel syndrome does not affect that. But don't you think that any diagnosis of the person's ability to lift and to manipulate objects should take into consideration a diagnosis of carpal tunnel syndrome, which is a very painful situation? And do you agree with Mr. Weems that the ALJ just blew the carpal tunnel syndrome diagnosis and didn't see it at all? No, Your Honor. The ALJ doesn't have to discuss all the evidence in the record. And so long as his opinion, his finding of residual functional capacity is supported by substantial evidence, it must be affirmed. With regard to the carpal tunnel syndrome, that is an indication of why the claimant would have had this hand pain, but the ALJ still limited the use of her hands. And there is nothing about the diagnosis that supports a more restrictive residual functional capacity with regard to the use of her hands. The authority for that? I mean, it seemed to me that carpal tunnel syndrome by itself would be a significant physical factor which would limit use of the hands. Do you have any authority in saying that a mere diagnosis of carpal tunnel syndrome does not have a significant effect on the ability to use your hand? Your Honor, I believe there is case law that discusses the fact, case law within the Ninth Circuit that discusses the fact that a mere diagnosis certainly is not sufficient to determine one of the listings at step three. And there's also the case law discussing issues of residual functional capacity and that the ALJ should rely, will rely on opinions that are given by various doctors. In this case, It's not sufficient to bear a diagnosis, but it's certainly a relevant factor that, if not taken into consideration by the ALJ, might require a remand so that he can take it into consideration. And the ALJ did take into consideration the hand limitations the claimant had? You're saying that because he took, he took evidence from other doctors as to what the specific hand limitations were, the fact that he didn't consider what caused those limitations, such as carpal tunnel syndrome, or perhaps rheumatoid arthritis, or some other condition which caused the limitations. So long as he adequately evaluates the limitations in arriving at his residual functional capacity, it's okay? Yes, Your Honor. Okay. I got you. I'd like to just refer briefly to the issue that claimant has raised talking about a subsequent application, a subsequent finding that the claimant was disabled. The Commissioner maintains that that argument has been waived. The claimant did not raise that issue to the magistrate judge. Which issue is this? That's the issue of the subsequent finding of disability, the argument that that's material evidence supporting a remand. Okay. Claimant has waived that issue by not presenting it to the magistrate. She didn't present it until the magistrate issued findings and recommendations, and then she discussed it in her objections to those, to that recommendation given to the district judge. Claimant could have introduced the evidence earlier if she had wanted to. That subsequent decision came in October of 2009. The magistrate's findings and recommendation, I believe, was in February of 2010. So she had four months in which to introduce that if she felt that it was material evidence by not introducing that we submit that that issue was waived. To the extent that the Court may have concerns about that, and especially because claimant's reply brief is focused quite heavily on that subsequent application, just I'll just note that that is, it's not material evidence in any event. I mean, we don't concede the waiver issue. We still submit that it's waived. But that decision is not material. It's considered a new period and it was based on new evidence. If you could look at A.L.J. Fong's decision in the excerpts of records, she was looking at different evidence that related to that different period, and that's the period under review here. No, I don't.  Thank you, counsel. Thank you, Your Honor. Mr. Weems, would you please address the issue which Mr. Talbert and I were discussing? What difference does it make whether the ALJ specifically considered the diagnosis of CTS if in arriving at his conclusion as to residual functional capacity, the ALJ had other evidence from treating and examining physicians which showed the actual range of your client's mobility and use of her hands? Your Honor, I believe that if that were true, it might make a difference. The problem is it's not true here. You have much earlier medical records about what was going on with her based on reports of pain. By not looking at the carpal tunnel diagnosis, which had the objective medical evidence from the MRI in September, there's no evidence that any of the input that the ALJ received reflected consideration of what was shown in those MRIs. And those MRIs showed the pitching. They showed the nerve damage. They showed the things that were not taken into consideration that would have established at least as to that earlier date, the date, you know, that was looked at. Well, let's not talk about what the ALJ might have seen. The issue here is whether the ALJ did see sufficient substantial evidence to come to the conclusions that he did regarding your client's RFC, residual functional capacity. You're saying that he didn't because he didn't see the MRIs, which would have included a diagnosis of CTS. I'm saying he didn't because it's clear he didn't look at all of the evidence of what her limitations were as reflected by the medical evidence. So what? If the issue is did he look at enough to sustain the ruling that he did, unless the evidence that you have is contradictory of that evidence upon which he relied? Your Honor, based on what the ALJ said she suffered from, I do think it is contradictory because the ALJ limited the findings, said it is merely multiple myalgias. And, you know, both the fibromyalgia and the carpal tunnel syndrome go far in excess of what is a few myalgias, a few tender points. If she examined your client's functional capacity correctly, does it make any difference whether the genesis of the disability is multiple myalgias or CTS? I do believe it does here, Your Honor, because of the prognosis and ability for recovery. But you're not talking about prognosis. You're talking about a retrospective look. What was that? You already got disability in 2008. You're asking an award for retrospective damage. Prognosis is a dirty word in this case. Your Honor, I think that where there's something like objective medical evidence, it has an impact and effect on how a doctor perceives what's going on. And by because of that. That's too academic. Thank you. Thank you, Your Honor. I believe I'm over time. It would have helped if you had had a statement of facts in your brief in which we could understand when, what the issue is and how it was developed in the administrative way, because I couldn't find a clear statement in your brief about what you were arguing with respect to carpal tunnel syndrome. Thank you. Thank you. Case just argued as submitted.
judges: Sammartino, Schroeder, Bea